IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DURWYN TALLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:15-cv-01073-SMY |
| | ) |
| DIRECTOR OF WEXFORD | ) |
| MEDICAL/HEALTH SOURCES, | ) |
| DR. TROST, | ) |
| JOHN DOE, | ) |
| DR. TALBOT, | ) |
| DR. BAKER, and | ) |
| DR. TILDEN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Durwyn Talley is currently incarcerated at the Menard Correctional Center in Menard, Illinois, but was previously incarcerated at the Danville Correctional Center, the Western Illinois Correctional Center, and the Pontiac Correctional Center. (Doc. 1 at 1, 11-13.) Proceeding *pro se*, Talley has filed a civil rights action pursuant to 42 U.S.C. § 1983 against medical staff at Menard, Danville, Western, and Pontiac, claiming that they violated his constitutional rights when they failed to provide treatment for his hypothyroidism. (*Id.* at 10-15.) Talley seeks money damages, injunctive relief, and a temporary restraining order. (*Id.* at 16.)

This matter is now before the Court for a preliminary review of Talley's complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if

the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

In July 2011, Talley was transferred to the Pontiac Correctional Center, where he was diagnosed with hypothyroidism. (Doc. 1 at 10.) After his diagnosis, Talley saw Dr. Tilden, who told Talley that his positive test result did not require any treatment. (*Id.* at 11.). Three months later, Talley was transferred to the Western Illinois Correctional Center. (*Id.*) During his fifteen-month tenure at Western, Talley saw Dr. Baker, telling him of his hypothyroidism problem and asking for treatment. (*Id.*) Baker told Talley that he did not require treatment and refused to conduct further testing for Talley's thyroid issues. (*Id.*) In January 2013, Talley was transferred to the Danville Correctional Center. (*Id.*) At Danville, Talley saw Dr. Talbot, who told Talley that he did not need treatment for his hypothyroidism and did not need further testing. (*Id.*)

In April 2014, Talley was transferred to Menard, where he currently resides. (*Id.*) In May 2014, Talley saw Dr. Trost. (*Id.*) Talley told Trost about his positive hypothyroidism test results, but Trost waved Talley off and said the results were nothing to worry about. (*Id.* at 11-12.) In April 2014 and the summer of 2014, Talley also showed the results to a nurse practitioner at Menard, who he has dubbed John Doe for this suit. (*Id.* at 12.) The nurse practitioner did not order any treatment or testing. (*Id.*) In October 2014, while Talley was in segregation, a nurse named Amy Lang saw Talley and told him that he should have received treatment for his hypothyroidism. (*Id.*) She was later transferred out of the segregation unit, and when she saw Talley again she was "angry" at him. (*Id.*) At some unspecified point, Talley claims that Tilden, Baker, Talbot, Trost, and the John Doe nurse practitioner conspired across four state prisons to "cover up" Talley's need for treatment. (*See id.* at 13.)

Talley claims that his condition has persisted "for over 4 years" – all the way to the present. (*Id.* at 15.) He claims that he currently has ongoing problems linked to his hypothyroidism, including pressure in his head, a racing heartbeat, and "throat, esophagus, stomach, and chest pain." (*Id.* at 13.) Talley purportedly filed grievances concerning his hypothyroidism at each of his prisons; the grievances at his last three prisons were answered but he received no response at Menard. (*Id.* at 3.) Unsatisfied with the results of the grievance process, Talley filed a civil rights complaint in this Court on September 28, 2015. (*Id.* at 1.)

## Discussion

The Court begins with two points about the parties referenced in Talley's complaint. First, throughout his pleading, Talley includes allegations about a number of medical staff at various prisons regarding his hypothyroid issues and his other medical problems: he claims that Amy John and Dr. Sood at Hill Correctional Center failed to treat his blood pressure issues in 2011, that Dr. Fenoglio and Elaine Hardy at Lawrence Correctional Center falsified his medical records, and that Amy Lang was involved in his treatment for his hypothyroidism at Menard. None of these individuals were named in Talley's caption or his list of defendants, so they cannot be considered parties to this action. *See Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (for an individual to be properly considered a party under Rule 10 he must be "specif[ied] in the caption"). Second, Talley has named the Director of Wexford Health Sources as a defendant in his caption, but he includes no allegations about the Director in the narrative of his complaint. Merely naming a party in the caption of a complaint is not sufficient to state a claim against him. *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Accordingly, all claims against the Director and the unnamed parties should be considered dismissed without prejudice.

Left with Talley's claims against the named defendants that are actually referenced in the narrative section of his complaint, the Court finds it convenient to divide Talley's *pro se* complaint into numbered counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**COUNT 1:** Trost and John Doe failed to provide treatment for Talley's hypothyroidism, in violation of the Eighth Amendment.

**COUNT 2:** Talbot, Baker, Tilden, Trost, and John Doe conspired to cover up Talley's need for treatment, in violation of the Eighth and First Amendments.

**COUNT 3:** Talbot, Baker, and Tilden failed to provide treatment for Talley's hypothyroidism, in violation of the Eighth Amendment.

Before the Court can evaluate the merits of Talley's claims, the Court must address Talley's litigation history, as Talley has filed a motion to proceed in this case as a pauper and pay the Court's filing fee in installments. According to Talley's complaint, he has struck out under the Prison Litigation Reform Act, so he cannot avail himself of pauper status and proceed with his case by paying the fee in installments unless his claims allege an "imminent danger of serious physical injury." *See* 28 U.S.C. § 1915(g). To meet the imminent danger requirement, a prisoner must allege a serious physical injury that is imminent or occurring at the time the complaint is filed, and must show that the threat or prison condition causing the injury is real and proximate. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003). In considering whether Talley's claims meet this requirement, a court must construe a *pro se* complaint liberally, and must avoid adopting a "complicated set of rules [to discern] what conditions are serious enough" to constitute a risk of serious injury. *Id.* That said, the "serious physical injury" exception for frequent fliers who have run up all of their strikes is designed to serve as an "escape hatch for genuine emergencies" only. *See Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002).

Applying this framework here, some of Talley's claims allege imminent danger, at least at the screening stage. Construed broadly, **Count 1** alleges that Trost and Doe failed to treat Talley's hypothyroidism during his time at Menard, and **Count 2** alleges that Talbot, Baker, Tilden, Trost, and Doe conspired to cover up Talley's need for treatment at some recent point. Talley also claims that the failure to treat at Menard has led to a number of current problems, including heart palpitations, feelings of pressure in his head, and chest pain. While it is a close case, given his recent symptoms, **Count 1** and **Count 2** allege arguable imminent danger for preliminary screening purposes, so Talley will be allowed to proceed with those claims without prepayment. *See Ciarpaglini*, 352 F.3d at 331 (failure to provide medical care could allege imminent danger). However, **Count 3** does not allege any current danger, as Talbot, Baker, and Tilden have not provided actual treatment for Talley for some time. Accordingly, **Count 3** must be dismissed without prejudice. Talley can bring that claim if he pays the full filing fee.

With the imminent danger inquiry out of the way, the Court must also determine whether Talley's remaining counts survive preliminary review under § 1915A. Talley's complaint focuses on his lack of treatment at Menard, so the Court will start there (**Count 1**). To state a medical claim under the Eighth Amendment, a plaintiff must first show that his condition "was objectively serious," and he must then demonstrate that officials acted with the requisite intent towards that condition. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). For screening purposes, Talley's claim passes the objective hurdle – he alleges that he has suffered heart palpitations, head pressure, chest pain, and other problems allegedly linked to his hypothyroidism, and those symptoms can indicate an arguably serious condition at screening. *See Gutierrez v. Peters*, 111 F.3d 1364, 1372 n.7 & 1373 (7th Cir. 1997). Talley's claim also passes the subjective hurdle – allegations of a failure to treat or a failure to provide follow-up

care can constitute deliberate indifference, depending on the circumstances. *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011); *McGowan v. Hulick*, 612 F.3d 636, 640-41 (7th Cir. 2010). As such, **Count 1** may proceed through screening as to Dr. Trost and the John Doe practitioner.

Talley also alleges that Talbot, Baker, Tilden, Trost, and Doe conspired to cover up Talley's need for treatment – actions that constituted deliberate indifference in violation of the Eighth Amendment and an effort to retaliate against Talley in violation of the First Amendment (**Count 2**). The problem with this claim is Federal Rule of Civil Procedure 8, which requires litigants to provide a minimum level of "factual content" to state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Especially for allegations of a "vast, encompassing" conspiracy – like the one Talley seems to be alleging here – a plaintiff "must meet a high standard of plausibility" to state a viable claim under Rule 8. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). In this case, all Talley alleges is that the defendants worked together to "cover[] up" his need for treatment – he does not allege how they covered up his need for treatment from 2011 to the present across four prisons, what actions they took to cover up his need for treatment, or any other concrete facts. Without those types of developed allegations, Talley has not made out a plausible claim, and **Count 2** must be dismissed without prejudice.

Over and above the claims in his complaint, Talley has also moved for a temporary restraining order, seeking an emergency referral to a thyroid specialist for treatment. Under Federal Rule of Civil Procedure 65(b), a restraining order is proper only when a plaintiff puts forth "specific facts" that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." This type of relief is typically warranted in the prison context "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). Here, Talley's motion

for a temporary restraining order must be denied, as he has not established that irreparable injury will occur before the adverse party can respond to his allegations. His condition, as alleged in his complaint, is chronic and long-standing, and he has not alleged a change in symptoms or the kind of emergency symptoms that demonstrate the need for immediate relief.

While Talley's motion for a temporary restraining order must be denied, he has also moved for a preliminary injunction, and the Court's provisional review dictates that Plaintiff's request for injunctive relief deserves consideration. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's request for a preliminary injunction will be referred to United States Magistrate Judge Philip M. Frazier, who shall resolve the request and issue a report and recommendation. Given the injunctive character of some of Talley's requests for relief, Warden Butler of Menard will be added to this case in her official capacity only for the purpose of responding to injunctive orders. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

One closing note concerning Talley's claim against John Doe: this individual must be identified before service of the complaint can occur on him. Where a prisoner's complaint states specific allegations describing the conduct of an unknown staff member sufficient to raise a constitutional claim against him, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the person's identity. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, guidelines for discovery aimed at identifying John Doe will be set by the magistrate judge, so that Plaintiff can identify that individual.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** against **TROST** and **JOHN DOE**. **COUNT 1** is **DISMISSED without prejudice** as to the

**DIRECTOR OF WEXFORD MEDICAL/HEALTH SOURCES**.  Because there are no further claims against him, the **DIRECTOR** is dismissed from this case.

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the **CLERK** is **DIRECTED** to add **WARDEN BUTLER** as a defendant to this case.  As indicated above, Warden Butler will be added in her official capacity only for the limited purpose of responding to injunctive relief.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. 3) is **GRANTED**, as indicated above.  A separate order shall issue directing the Menard trust fund officer to deduct payment from Plaintiff's prison trust fund account.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **TROST** and **BUTLER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, a copy of the motion for injunctive relief, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the John Doe defendant until such time as Plaintiff has identified him by name in a properly filed amended complaint. It is Plaintiff's responsibility to provide the Court with the name and service address for this individual.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon counsel once entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant **TROST** is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **BUTLER** shall also file an appropriate responsive pleading to the extent Plaintiff seeks injunctive relief.

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Philip M. Frazier for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's pending Motion for Recruitment of Counsel (Doc. 2) is **REFERRED** to Magistrate Judge Philip M. Frazier for consideration.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Temporary Restraining Order (Doc. 4) is **DENIED**.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's pending Motion for a Preliminary Injunction (Doc. 4) is hereby

**REFERRED** to United States Magistrate Judge Philip M. Frazier, who shall resolve the request for injunctive relief and issue a report and recommendation. The period for filing any objections to Judge Frazier's report and recommendation shall not exceed **14 days** from the date of the report. Any motions filed after the date of this Order that relate to the request for injunctive relief or seek leave to amend the complaint are also **REFERRED** to Judge Frazier.

Further, this entire matter is hereby **REFERRED** to United States Magistrate Judge Philip M. Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under 28 U.S.C. § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay

in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 1, 2015**

<u>s/ STACI M. YANDLE</u>
**STACI M. YANDLE**
**United States District Judge**